# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (NORTHERN DIVISION)

| | |
|---|---|
| **JEREMY HUNT**<br>9932 Reyment Court<br>North Chesterfield, Virginia 23237<br>*Resident of Chesterfield County* | Civil Action No.: |
| **ROCHELLE ANDERSON**<br>1304 W. Omni Court<br>Ashland, Virginia 23005<br>*Resident of Hanover County* | |
| **DAVID MARTIN**<br>131 Maurertown Mill Road<br>Maurertown, Virginia 22644<br>*Resident of Shenandoah County* | Collective Action Claim |
| and | |
| **ROBERT SIMMONS**<br>7825 Mandan Road, Apt. 204<br>Greenbelt, Maryland 20770<br>*Resident of Prince George's County* | <u>Jury Trial Requested</u> |
| Plaintiffs, | |
| ***Individually and on Behalf of All***<br>***Similarly Situated Employees*** | |
| v. | |
| **ALDI, INC.**<br>1200 North Kirk Road<br>Batavia, Illinois 60510 | |
| Serve: The Corporation Trust, Inc.<br>      2405 York Road, Suite 201<br>      Lutherville, Maryland 21093 | |
| Defendant. | |

<u>**COLLECTIVE ACTION COMPLAINT FOR WAGES OWED**</u>

JEREMY HUNT, ROCHELLE ANDERSON, DAVID MARTIN and ROBERT SIMMONS, Plaintiffs, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against ALDI, INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.* (hereinafter, "MWHL"); unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* (hereinafter, "MWPCL"); and unpaid wages, interest, reasonable attorneys' fees and costs under the Virginia Minimum Wage Act, Va. Code § 40.1-28.8, *et seq.* (hereinafter, "VMWA"); and in support thereof, state as follows:

<u>**INTRODUCTION AND BACKGROUND**</u>

Aldi, Inc. (hereinafter, "Defendant") is a national grocery store chain. Defendant operates numerous stores across the United States. The focus of Defendant's business is selling discount food and beverage items. Defendant employs store managers to assist with its business. In theory, store managers are supposed to supervise the operations of Defendant's stores. In practice, store managers spend almost all of their time performing general labor tasks. These tasks are identical to those performed by many of Defendant's other workers. Stocking shelves, unloading trucks and sweeping floors are common examples of these tasks.

Defendant's district managers were the only employees who could perform true managerial tasks. District managers were responsible for hiring and firing. They were charged with supervising store managers and other similarly situated employees. District managers were the

only employees in the stores that had any discretion. Store managers lacked discretion altogether; they had to do exactly what they were told. They were told to complete whatever tasks were necessary to ensure that things were running smoothly. Their tasks were based on the particular needs of Defendant's stores. These tasks could change from day-to-day. They were required to perform each task that they were given.  This was regardless of whether these tasks should have been performed by other employees. These conditions resulted in store managers having to work excessive hours.

Working this many hours was expected of Defendant's store managers. Understaffing left no other choice. Defendant routinely failed to staff enough employees to complete all of the tasks that its stores required. This resulted in store managers being responsible for additional tasks.

For the performance of their tasks, store managers were paid an hourly rate. They were paid in this manner for the duration of the relevant period. However, Defendant failed to pay its store managers correctly. Store managers were consistently cheated out of their wages. Although working overtime was integral to their employment, they were only paid straight time for the hours they worked. They consistently failed to receive overtime ("time and a half") wages for working over forty (40) hours a week.

Store managers were also not paid for all hours worked. They were only paid for working the hours reflected on their schedules. Although they were typically scheduled to work fifty (50) hours each week, in practice, they worked far more. Working sixty (60) to seventy (70) hours each week was routine throughout their employment. There were times when they worked even more. Working these extra hours did not cause them to be paid additional wages. They were not paid at all for these additional hours worked.

## THE PARTIES

1.      Plaintiff Jeremy Hunt (hereinafter, "Hunt") is an adult resident of Chesterfield County, Virginia.

2.      Plaintiff Rochelle Anderson (hereinafter, "Anderson") is an adult resident of Hanover County, Virginia.

3.      Plaintiff David Martin (hereinafter, "Martin") is an adult resident of Shenandoah County, Virginia.

4.      Plaintiff Robert Simmons (hereinafter, "Simmons") is an adult resident of Prince George's County, Maryland.

5.      Defendant Aldi, Inc. (hereinafter, "Defendant") is an incorporated for profit business.[1]

6.      Defendant is the United States subsidiary of the international conglomerate Aldi Süd.

7.      Defendant's primary office is in Batavia, Illinois.

8.      Defendant is a prominent discount grocer.

9.      Defendant has nearly two-thousand (2000) stores across the United States.

10.      Defendant employs store managers at each of its stores.

11.      From approximately June 2015 until November 2017, Plaintiff Hunt was employed as a store manager. He was assigned to work at various stores in Virginia.

12.      From approximately January 2016 until November 2017, Plaintiff Anderson was employed as a store manager. She was also assigned to work at various stores in Virginia.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation either, explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency.  To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

13.     From approximately January 2013 until December 2017, Plaintiff Martin was employed as a store manager. He was assigned to work at stores in Virginia and West Virginia.

14.     From approximately September 2005 until March 2017, Plaintiff Simmons was employed as a store manager. He was assigned to work at stores in Maryland.

15.     Due to the nature of its business, Defendant is subject to the FLSA, MWHL, the MWPCL and the VMWA.

16.     Due to the amount in revenues generated, Defendant is subject to the FLSA, MWHL, the MWPCL and the VMWA. Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

17.     Based on the duties they performed as part of their employment with Defendant, at all times relevant to this Complaint, Plaintiffs engaged in interstate commerce.

18.     Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b), the MWPCL, § 3-501(b) and the VMWA, § 40.1-28.9(a).

19.     At all times relevant, Plaintiffs and other store managers worked as non-exempt employees for Defendant.

20.     The duties assigned to Plaintiffs and other store managers do not satisfy the duties tests contained within any of the exemptions specified in the FLSA, MWHL, the MWPCL or the VMWA.

21.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and other store managers.

22.     Defendant's agents were actively engaged in the management and direction of Plaintiffs and other store managers.

23.     Defendant possessed and exercised the authority to determine the hours worked by Plaintiffs and other store managers.

24.     Defendant had and exercised the authority to control Plaintiffs' tasks and the tasks of other store managers.

25.     Defendant had and exercised the authority to change the course of Plaintiffs' and other store managers' duties.

26.     Plaintiffs and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

27.     Defendant made all decisions relating to Plaintiffs' and other store managers' rates and methods of pay.

**JURISDICTION AND VENUE**

28.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

29.     Discretionary supplemental jurisdiction of Plaintiffs' state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from the common nucleus of operative facts on which Plaintiffs' federal claims are based.

30.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

31.     This Honorable Court has personal jurisdiction over Defendant; Defendant conducts sufficient business within Maryland so as to constitute a submission to its laws.

32.     Pursuant to 28 U.S.C. § 1391 (c) and 28 U.S.C. § 1391(b), venue is appropriate; Defendant employs numerous residents of Maryland, which includes members of the putative class. A substantial part of the events or omissions giving rise to this matter occurred in Maryland.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

33.     Defendant is in the business of selling discount groceries. Its business centers on selling Aldi-branded products at prices comparatively lower than national brands. Through smaller storefronts and minimal labor costs, Defendant is able to reduce its own expenses and pass a percentage of those savings to its customers through discounted goods.

34.     To assist its customers, Defendant employs store managers at each of its stores. Plaintiffs held this position. Plaintiffs and other store managers were/are responsible for general oversight. This includes delegating work tasks and performing routine functions on the floor.

35.     Plaintiffs and other store managers performed most of their duties on the floor. Their primary duties consisted of routine labor associated with the role of a grocery store clerk. Operating the cash register and checking inventory were common tasks they performed.

36.     Plaintiffs and other store managers spent a mere fraction of their time performing administrative or executive tasks.  Their core tasks centered on manual labor. Unloading supply trucks and stocking shelves were common examples.

37.     Unloading supply trucks was known as "throwing the truck." Supply trucks arrived at Defendant's stores on a regular basis. Unloading the inventory from these trucks was a task Plaintiffs consistently performed. Unloading inventory was one of Plaintiffs' and other store managers' regular assignments.

38.     Stocking inventory was related to this assignment.  Once the trucks were unloaded, Plaintiffs and other store managers had to stock the inventory on the floor of Defendant's stores.

This included having to set up product displays in accordance with Defendant's strict instructions. They were required to follow these instructions precisely.

39.　　Plaintiffs and other store managers were also instructed to clean Defendant's stores. They were responsible for various janitorial tasks. They were regularly required to sweep and mop the floors. Taking out the trash was another one of their regular tasks.

40.　　Plaintiffs and other store managers performed their tasks under the direct supervision of Defendant's district managers. District managers were the persons responsible for delegating Plaintiffs' task.

41.　　Although Plaintiffs and other store managers were responsible for some general oversight tasks, these tasks had to be approved by their district managers. None of their tasks were performed autonomously. Plaintiffs and other store managers lacked both decision making authority and independent judgment. These conditions were applicable for the entirety of their employment.

42.　　At the outset of their employment, Plaintiffs and other store managers have to go through a period where they are entitled "managers in training." Managers in training are paid in the same manner and perform much of the same job functions as store managers. Once the training period ends, store managers go on to perform the same duties they completed while in training. None of these duties ever involved the use of discretion. Regardless of whether or not they were in training, Plaintiffs and other store managers had to always do what they were told.

43.　　Plaintiffs and other store managers satisfied the requirements of their position; they performed their assignments to the extent required by Defendant.

44.　　Plaintiffs and other store managers were assigned to work in many different stores across the United States. It was common for them to switch between a number of stores over the

course of their tenures. Regardless of which store they were assigned, the procedures specific to their employment were always the same. Defendant's pay policies were universal.

45.     Plaintiffs and other store managers were paid an hourly rate.[1] *See* Exhibit 2 to Plaintiffs' Complaint.

46.      For the duration of his employment as a store manager, Plaintiff Hunt was paid an hourly rate of twenty-four dollars and thirty-eight cents ($24.38).

47.     Plaintiff Anderson was paid an hourly rate of approximately twenty-five dollars ($25.00).

48.     Plaintiff Martin was paid an hourly rate of twenty-five dollars and eleven cents ($25.11).

49.     On occasion, Plaintiffs and other store managers also received nondiscretionary bonuses. These bonuses were based on overall store productivity. They had no relation to hours worked.

50.     Plaintiffs and other store managers were typically scheduled to work fifty (50) hours each week. In practice, they were required to work far more. It was routine for Plaintiffs and other store managers to work sixty (60) to seventy (70) hours each week. There were times when they worked as many as eighty (80) hours.

51.     The numbers of hours they were actually paid for was dependent on how many hours they logged into Defendant's time system. Defendant instructed Plaintiffs and other store

---

[1] Defendant has been sued before by its store managers. In 2016, in the Northern District of New York, three (3) store managers brought a class and collective action lawsuit against Defendant. *See* Exhibit 1: 2016 Complaint. While the duties attributable to the store manager position remain the same, subsequent to the lawsuit, Defendant converted its store managers from salaried to hourly employees.

managers to log no more than their scheduled hours each week. It was made clear not to log more than fifty (50) hours.

52.     Recording more than fifty (50) hours a week would regularly result in Plaintiffs' and other store managers' time records being altered. Defendant's management officials routinely altered Plaintiffs' and other store managers' time records to make it appear that they worked no more than fifty (50) hours in a given week.

53.     Recording more than fifty (50) hours a week could also result in disciplinary actions. This included threats of termination. These threats often prevented Plaintiffs and other store managers from recording their true hours worked. Due to Defendant's unlawful policies, they knew it was simply not an option to record all of their work hours.

54.     Plaintiffs and other store managers were only paid "straight time" for the hours that they recorded. They failed to receive overtime wages. They never received "time and a half" their regular hourly wage rate for working over forty (40) hours a week.

55.     Plaintiffs and other store managers consistently worked over forty (40) hours each week. Defendant's employment practices required them to work excessive hours. For instance, understaffing was routine throughout Plaintiffs' employment. Defendant sought to reduce its labor costs by staffing only a limited number of employees at its stores. These conditions required Plaintiffs and other store managers to work hours outside of their schedules.

56.     Due to the limited number of employees that Defendant staffed at its stores, Plaintiffs and other store managers were required to perform multiple roles. It was routine for them to perform the role of Defendant's store clerks. This included having to operate the cash register, stock shelves and complete various janitorial tasks. They had to perform any tasks that were necessary to the operation of Defendant's stores. Having to complete all of these tasks caused Plaintiffs and other store managers to consistently work overtime.

57.     There is no bona fide dispute that Plaintiffs and other store managers are owed overtime wages for all hours worked over forty (40) in a workweek.

58.     The duties performed by Plaintiffs and other store managers did not implicate any exemptions contained within the FLSA.

59.     Plaintiffs and other store managers retained no discretion in performing any of their assigned tasks.

60.     Plaintiffs and other store managers did not have hiring or firing authority.

61.     Plaintiffs and other store managers could not impose any disciplinary measures.

62.     The duties performed by Plaintiffs and other store managers simply consisted of manual labor.

63.     Plaintiffs and other store managers were required to work overtime to complete their labor.

64.     Defendant's upper management officials were routinely present in Plaintiffs' and other store managers' work area.

65.     Defendant was well aware of the overtime hours worked by Plaintiffs and other store managers.

66.     Defendant suffered and/or permitted Plaintiffs and other store managers to work these overtime hours.

67.     In bad faith, Defendant withheld the overtime wages owed to Plaintiffs and other store managers.

68.     Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

69. Plaintiffs and other similarly situated employees work or worked as store managers and/or managers in training (hereinafter, collectively referred to as "store managers") for Defendant.

70. The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) in a workweek.

71. Defendant knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

72. Defendant suffered or permitted Plaintiffs and other store managers to work more than forty (40) hours per week.

73. Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

74. Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations. Plaintiffs make these same demands on behalf of all members of the putative class.

75. Plaintiffs consent to be party plaintiffs in this matter. Plaintiffs' consent forms are attached to this Complaint as Exhibits 3-6.

76. It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

77. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

78.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

79.     Many of these similarly situated store managers would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

80.     Upon information and belief, others will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

81.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees, current and former, that served as store managers for Defendant and were subject to the following practices and policies: denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek.

82.     Plaintiffs are members of the proposed class they seek to represent.

83.     The claims alleged by Plaintiffs are typical of the claims of the proposed class members.

84.     The potential members of the class are sufficiently numerous that joinder of all class members is impractical.

85.     There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

86.     Counsel for the proposed class is qualified and experienced in litigating MWHL class actions and other complex litigation matters.

87.     Counsel is capable of providing adequate representation for all members of the proposed class.

88.     A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

## CLASS ACTION ALLEGATIONS UNDER VIRGINIA WAGE LAWS

89.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees, current and former, that served as store managers for Defendant and were subject to the following practices and policies: denial of overtime wages under the VMWA for hours worked over forty (40) in a single workweek.

90.     Plaintiffs are members of the proposed class they seek to represent.

91.     The claims alleged by Plaintiffs are typical of the claims of the proposed class members.

92.     The potential members of the class are sufficiently numerous enough so that joinder of all class members is impractical.

93.     There are questions of law and fact common to the class that predominate over any questions exclusive to the individual class members.

94.     Counsel for the proposed class is qualified and experienced in litigating class actions and other complex litigation matters; furthermore, counsel is capable of providing adequate representation for all members of the proposed class.

95.     A class action is superior to other available methods for the fair and efficient adjudication of this case and will serve to promote judicial economy to the benefit of this Court, as well as the involved parties.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Count I.  Violation of the FLSA: Failure to Pay Overtime Wages*

96.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

97.     Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

98.     As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek; Defendant failed to compensate Plaintiffs for these additional hours.

99.     Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked by advising Plaintiffs to underreport their hours.

100.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

101.     Under the FLSA, Plaintiffs are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### *Count II.  Violation of MWHL: Failure to Pay Overtime Wages*

102.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

103.     Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

104.     Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

105.     Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek. Defendant unlawfully compensated Plaintiffs for these additional hours.

106.     Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked.

107.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

108.     Under MWHL, Plaintiffs are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' regular hourly wage rate.

### *Count III.  Violation of VMWA: Failure to Pay Overtime Wages*

109.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

110.     Pursuant to the Virginia Minimum Wage Act, § 40.1-28.10, each employer shall pay the required overtime wages in accordance with the FLSA.

111.     Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek. Defendant unlawfully failed to compensate Plaintiffs for these additional hours.

112.     Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they were owed.

113.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

114.     Under the VMWA, Plaintiffs are entitled to additional wages from Defendant for all hours worked.

### *Count VI. Violation of the MWCPL: Failure to Pay Wages Owed*

115.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

116.     Plaintiffs are entitled to wages under the Maryland Wage Payment Collection Law, Labor and Employment §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

117.     Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment in accordance with §3-505(a).  This is specific to Defendant's failure to pay Plaintiffs overtime for all hours worked over forty (40) in a workweek.

118.     Defendant willfully and intentionally withheld from Plaintiffs the wages they are owed and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

119.     There is no *bona fide* dispute that Plaintiffs are owed wages for work performed while employed by Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated, pray for the following relief:

a)     Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b)     Designation of this action as a class action on behalf of Plaintiffs and all members of the proposed state classes;

c)     Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

d)     Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by MWHL;

e)     Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the MWPCL;

f)     Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the VMWA;

h)     An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and other store managers' regular hourly rate for all overtime hours worked;

i)     An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

j)     An award of treble damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

k)     An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant;

l)     Leave to add additional plaintiffs, opt-in or party, through the filing of consent forms; and

m)     All further relief deemed just and equitable by this Honorable Court.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,


*/s/  Benjamin L. Davis, III*
Benjamin L. Davis, III (29774)
bdavis@nicholllaw.com
George E. Swegman (19444)
gswegman@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*