IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT

- - - - - - - - - - - - - - - x
:
JEREMY HUNT, et al.,                 :
:
        Plaintiffs,          :    Civil No. 18-02485-PX
:
    v.                       :
:
ALDI, INC.,                          :
:
        Defendant.           :    Greenbelt, Maryland
:
- - - - - - - - - - - - - - - x    April 4, 2019


**TELEPHONE CONFERENCE**


BEFORE:  THE HONORABLE PAULA XINIS, Judge


APPEARANCES:                        GREG SWEGMAN, Esq.
Law Offices of Peter T. Nicholl
36 South Charles Street
Suite 1700
Baltimore, MD 21201
   On Behalf of the Plaintiff

LOUISA JOHNSON, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE
Suite 2500
Atlanta, GA 30309-3962
   On Behalf of the Defendant

Audio Operator:                     Brian Ulander

Transcription Company:              CompuScribe
P.O. Box 789
Cheltenham, Maryland  20706-9998


Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

# I N D E X

|  | Page |
|---|---|
| Preliminary Matters | 3 |
| Comments by George Swegman, Esq.<br>   Attorney for the Plaintiffs | 4 |
| Comments by Louisa Johnson, Esq.<br>   Attorney for the Defendant | 14 |
| Ruling by Judge Xinis | 17 |

1                    P R O C E E D I N G S

2          (Whereupon, at 10:04 a.m., the telephone conference

3    began.)

4               THE COURT:  Are we recording?

5               THE CLERK:  We are Your Honor, the matter now

6    pending before the Court is civil action number PX-18-02485,

7    Jeremy Hunt et al versus ALDI, Incorporated.  The matter

8    comes before this Court for a telephone conference.  Counsel

9    please identify yourselves for the record.

10              MR. SWEGMAN:  Thank you.  This is George Swegman,

11   counsel for the plaintiffs.

12              MS. JOHNSON:  And this is Louisa Johnson.  Counsel

13   for defendant, ALDI, Inc.

14              THE COURT:  All right, did you say your name was

15   Ms. Johnson?  Did I get that right?

16              MS. JOHNSON:  Yes, ma'am.

17              THE COURT:  Okay great.  Anyone else on the line

18   with us?

19              MR. SWEGMAN:  There is no one on the line -- this

20   is George Swegman, counsel for the plaintiff, no one on the

21   line here other than myself.

22              MS. JOHNSON:  And this is Louisa Johnson, counsel

23   for defendant, there is no one else on the line for the

24   defendant.

25              THE COURT:  Okay, great.  Okay, counsel, we are

1   brought together by the letter that I received at ECF 36 from

2   the defense -- I am sorry, 33, and then the plaintiff's

3   response at 36.  So let me start with this, I just want to

4   understand one thing factually.  The letter in question that

5   went out on the law offices letter head, references that

6   additional information can be found at the website.

7            Mr. Swegman can you navigate me through where I can

8   find that information?  I want to have the full picture in

9   front of me.

10           MR. SWEGMAN:  Oh boy, Your Honor, you are asking

11  the wrong person that information.  Had I known that was

12  going to be your first question, I would have had my

13  paralegal in with me because I am a real --- when it comes to

14  the computer and a website.  And he does pretty much

15  everything for me.

16           THE COURT:  Well, I -- right now I put the website

17  in.  So I am in the position of someone receiving this

18  letter.  And I don't see anything on the cover page.  So then

19  I go to cross action because this is one of them and you do

20  have in the drop down menu, you have wage an hour.  So I go

21  to that.

22           MR. SWEGMAN:  Right.

23           THE COURT:  And this case is not listed.  So there

24  is Apex, Tallinn, Althus, UMMS, Insight and Landry.

25           MR. SWEGMAN:  And it should be listed.  Now you got

1    me questioning where we are in this thing.

2              THE COURT:  Right.

3              MR. SWEGMAN:  Okay.

4              THE COURT:  If that is where it --- and if it is

5    not there, I wanted to hunt it down because if a person was

6    receiving this, they would have access to this information

7    and right now --

8              MR. SWEGMAN:  Sure.

9              THE COURT:  -- my concern is that you know, what

10   was -- was it there and removed?  And what does that tell me?

11   Or was it never there to begin with?  And what does that tell

12   the receiver of the letter?

13             MR. SWEGMAN:  Or, the other possibility is there

14   may be a different way to approach it on that site?  And I

15   can't answer any of those questions.

16             THE COURT:  Yes, well it might be important at some

17   point to learn that because I don't see another way to

18   approach it.  Your -- Your subject matters do not -- you

19   know, about --- areas, these are practice areas.  Which don't

20   include class actions.  If I -- no, results class actions is

21   the only drop down  menu.  It takes me to wage an hour.  It

22   is not a toxic(sic) tort or defective product.  I go to wage

23   an hour --- this case.

24             MR. SWEGMAN:  Your Honor --

25             THE COURT:  So you have got --

1          MR. SWEGMAN:  -- absolutely should be there.

2          THE COURT:  -- so we got a problem with the problem

3   here.  Okay.

4          MR. SWEGMAN:  Yes, we do.

5          THE COURT:  Just to let you know.  Now, the

6   defendant's position is that this letter essentially

7   constitutes advertising and because it is post filing of this

8   law suit, it is also effectively an end run around the opt in

9   process.  And the defendants have requested in document

10  production and in interrogatories information relevant to

11  this.  If I am getting this -- the plaintiff's current

12  position, you do concede that it is advertising?

13         MR. SWEGMAN:  Absolutely.  There is no question

14  that it is advertising.  And I don't know if you have

15  received it but I sent you a short note and copied it to

16  counsel for the defendants and I am sorry -- George Swegman,

17  I was instructed to start every statement with my name and I

18  failed to do that.  But last night I sent over copies of the

19  envelopes in which these letters were mailed out.

20         And it clearly states advertisement on the front of

21  the envelope.  The reason I sent that was it is part of the

22  argument with respect to the issue of has notice been

23  received?  My understanding is that well over 60 percent of

24  envelopes sent out like this that clearly state advertisement

25  on the outside of the envelope never get opened or read.  But

1    that being said --

2             THE COURT:  I mean, I think the plain language of

3    19307.3 references advertising on the outside of the

4    envelope.  I have not received to supplement.  So obviously

5    looking at the letter, it was very concerning.  I know as a

6    common practice the letters often do say advertising as well

7    for this very reason.  Because --- separated her letters and

8    that this letter is -- I got to tell you it is troubling to

9    me because it does in sum and substance constitute and end

10   run around the opt in process.

11            When -- you are telling me that if they sign here,

12   they are authorizing consent of the filing and prosecution of

13   the FLSA action in their name and on behalf of all persons

14   similarly situated.  That is ultimately going to be my call.

15   And --

16            MR. SWEGMAN:  Yes, it is.

17            THE COURT:  -- yes, so you -- these letters

18   basically ask for someone to sign and sign up potentially

19   without ever having spoken to anyone about this case, which

20   is the second problem?  So I am not quite sure whether --

21   well let me say this, you don't yet have because you have

22   said they are advertising, you do not have an attorney client

23   relationship with the individuals in the first instance?

24   These are folks who you are soliciting to sign up.

25            MR. SWEGMAN:  That is correct.

1          THE COURT:  To the -- and to the extent that the

2   defense wishes to see that list especially in light of

3   attending discovery process on conditional certification, I

4   don't see a problem with that.  What exactly is the problem

5   with the defendants receiving the documents concerning the

6   communication --- the list of the people who were sent them?

7          MR. SWEGMAN:  Well with respect to the stated

8   reasons why they feel that is relevant, I would simply say

9   this.  They are arguing that this is or could stand in the

10  stead of a notice, but at the same time they clearly indicate

11  and I would be the first to admit that these are not proper

12  notices on a conditional cert.  I have negotiated a number of

13  those and they -- these letters do not meet the requirements

14  of those notices.  Which is why we list them as advertising,

15  not as a court notice or anything else.

16          Now -- I understand --

17          THE COURT:  Right, I get that -- I understand that.

18          MR. SWEGMAN:  -- Okay --

19          THE COURT:  But I am still confused as to why the

20  defendants cannot receive in discovery about putative(sic)

21  class certification, the individuals who received these

22  letters because at the end of the day I am going to figure

23  out what this class even conditionally looks like and what

24  the notice should look like. I think it is relevant that an

25  opening salvo has already been mailed to a particular

1    category of individuals who you believe may constitute a

2    putative class.  I mean, you chose to do this after --

3                MR. SWEGMAN:  We did.

4                THE COURT:  -- so you got to expect that if the

5    defendant gets wind of it during conditional certification,

6    they are going to want to know the universe of solicitations.

7                MR. SWEGMAN:  Well, I am not sure that the universe

8    of solicitations is relevant for the purposes of what -- what

9    they are arguing in -- I mean, the rationale that they put

10   forward for needing this information is that the people on

11   that list would not need a redundant notice of certification

12   of a collective.  And --

13               THE COURT:  Well, I may not --

14               MR. SWEGMAN:  -- Your Honor, that is simply not the

15   case.

16               THE COURT:  -- well, Mr. Swegman, I may not buy

17   that at the end, right?  That just because they received a

18   letter which is deficient under FLSA to give proper notice,

19   these individuals should not receive a letter later.  But

20   that is a legal argument that is going to be made after -- if

21   they make it at all after the fact is determined.

22               MR. SWEGMAN:  Right.

23               THE COURT:  There is still a whole of gray in

24   between about what notice will look like that this initial

25   solicitation may be relevant for.  So just because something

1  is relevant in discovery or on conditional certifications

2  doesn't mean that I am going to buy the defendant's argument

3  in the end.  So let me say that.

4          MR. SWEGMAN:  Okay and I understand --

5          THE COURT:  Yes, their smaller point though or

6  their secondary point which is it is relevant to conditional

7  certification, I do credit.  That is -- at least that is

8  where I am right now.  You haven't convinced me otherwise.

9          MR. SWEGMAN:  Okay.  Well, I would submit under the

10 circumstances that the -- I am not sure quite frankly where

11 the burden would lie in terms of convincing but I am --

12         THE COURT:  Well, the defense --

13         MR. SWEGMAN:  -- somewhere --

14     (Whereupon, both parties are speaking simultaneously.)

15         THE COURT:  -- the defendants have asked for it and

16 you have objected, if I understand it right, your initial

17 objection was attorney client privilege which not on the

18 table anymore.  Your second objection is it doesn't -- it is

19 not relevant and to the extent that I don't credit your

20 arguments, it is your burden because this is all about --

21 here is the thing is, the big elephant in the room is this is

22 all about conditional certification of a particular class and

23 you have already sent out one solicitation which basically

24 does in the end run around the very process that we are

25 engaging in.

```
 1              I just haven't authorized it.  So then they are

 2    going to get another notice of some form or substance maybe

 3    if I certify the class that will look similar --

 4              MR. SWEGMAN:  Completely different.

 5              THE COURT:  -- or different.  Well, we don't --

 6    you know, that is the point though.  Since you have already

 7    gone out there and done this, the defendants are entitled to

 8    know just what the ramifications of it are and at the end of

 9    the day it may not make a difference.  But you know, we don't

10    know in the end of the day legally whether it is going to

11    have any impact.

12              MR. SWEGMAN:  Right.

13              THE COURT:  It is certainly relevant to what I do

14    next with regards with conditional certification even if it

15    is just the means of it.

16              MR. SWEGMAN:  Well, my concern is that as I said

17    before, probably 60 or more percent of the people who

18    received this envelope never opened it.  They have no -- I

19    mean, because of the way it is handled which is completely

20    different than a court sponsored notice, we are going to be

21    giving them the names of people who have no clue for the most

22    part what they may be talking about and I am not sure what

23    they are going to use those names for.

24              I mean, they have indicated that they may use them

25    in a motion to preclude additional notice to be sent to these
```

1   people and you have indicated that that is a question down

2   the road and certainly it is.  But there is certain I guess

3   privacy concerns that these people -- I am not sure what they

4   are going to do with the information --

5          THE COURT:  Hold on --

6          MR. SWEGMAN:  I know, it is -- we opened it up when

7   we sent the letters out.

8          THE COURT:  Right.  And that is the thing.  Like

9   advertisement by definition is very not private.  It is very

10  public.  So obtaining the names.  Sending out the notices.

11  Is all about disclosure and I am not quite sure a disclosure

12  to the defendants own employees you know, maybe the

13  defendants would be asking that question to you which is

14  well --

15         MR. SWEGMAN:  I understand that.  But I am not sure

16  at this point and maybe it would be appropriate to get a

17  proffer what the defendants would be doing with the names

18  other than making a motion with respect to redundancy on the

19  Court approved notice?

20         THE COURT:  Well, I am happy to hear -- I am going

21  to at some point I certainly will turn to Ms. Johnson, but

22  you know, I can tell you already that I can think of lots of

23  ways in which knowing whether an individual down the road

24  received the solicitation could be relevant.

25         MR. SWEGMAN:  To?

1          THE COURT:  Well, not only class certifications but

2    merits.  I mean, heck,  if I had someone in the chair as a

3    deponent, as a named plaintiff, and I wanted to know how they

4    were going to take on their duties as a named plaintiff in a

5    putative class, I would want to know how they got there?  And

6    secondarily if a class plaintiff you know, I learned of that

7    person's involvement in this case and I learned of it through

8    this letter versus through a court ordered disclosure, I

9    might have some questions about how they tilt and why?

10          You know, what their particular biases might be

11   simply because they received this letter.  And there is lots

12   of ways that -- I am not here to do the defendant's job but

13   you know, any time a witness/party receives information about

14   the law suit it is indeed fair game unless it is

15   attorney/client privilege.  And this is not that yet.

16          So that is why I am -- I mean, I have been there.

17   I have been there.  I have been defending plaintiffs who

18   learn about a case at a town meeting or at a collective you

19   know, a group thing about a particular problem facing our

20   community. And they get asked about it and it is fair.

21   Because it goes to bias.  There may not be any.

22          But that is why I am getting -- I am having a hard

23   time when we are talking about conditional certification and

24   not seeing the relevance but let me turn to Ms. Johnson.  Can

25   you give us succinct proper beyond what you have already

1    written about why you wish to proceed on?

2            MS. JOHNSON:  Yes, Your Honor.  And I should note

3    that I would also like to see -- I am sure of the

4    technological issues but I have not been able to find the

5    website and I have not seen the envelope that I understand

6    was sent this morning.  But with respect to your question,

7    Your Honor, I -- you have said much of what I would have

8    said.

9            But I want to make the point that with respect to

10   the letter itself, just because plaintiffs chose to only tell

11   their side of the story and not send a balance notice with

12   their consent to join --- does not mean it does not

13   constitute notice of this lawsuit.  And a consent form that

14   could operate to last on the opt in.

15           Plaintiffs' counsel have acknowledged in their

16   communications with us that one of their two opt in

17   plaintiffs, Ms. Danielle Tucker received notice of the

18   lawsuit and chose to join through this very letter.  I am

19   also wondering if there are other letters that have been

20   sent.  I have heard that there might have been a letter that

21   was sent prior to this one.

22           So I don't even believe that this is the only

23   letter that was issued about this lawsuit.  And I want to

24   know about all of those notices and you are right, Your

25   Honor, I want to know if people who had no intention of suing

1   ALDI but were short on cash and got something in the mail

2   that maybe said, "Hey join this lawsuit and you will get

3   money."  I would like to know if that is the case.  I would

4   like to know if those types of communications occur.

5          I would like to know with what bias people are

6   joining the lawsuit.  And I also would like to know if the

7   notice has already gone to thousands of people, why a second

8   notice would be necessary?  We would argue obviously in our

9   opposition to conditional certification all the reasons that

10  we believe that the people are not similarly situated to the

11  named plaintiff in this case.

12         But even if Your Honor determines that they are, we

13  also believe that if this notice has already been

14  disseminated broadly that there is really no point in sending

15  another one.  Just because --- bias, doesn't mean it is not

16  notice.

17         THE COURT:  And I may disagree with you on that but

18  I credit that knowing what was said and to who may affect the

19  question of notice.  If I find that the class is similarly

20  situated and now we are talking about what is this notice

21  going to look like?  It is relevant to that analysis, even if

22  in the end doesn't change what we do.  Does that make sense,

23  Ms. Johnson?

24         MS. JOHNSON:  Yes, Your Honor.

25         THE COURT:  All right --

```
 1              MR. SWEGMAN:  Your Honor?

 2              THE COURT:  Yes?

 3              MR. SWEGMAN:  George Swegman again.  Let me just

 4    propose this.  It sounds as if the concerns might be met by

 5    letting defendants know all of the people who responded to

 6    this particular letter.  Now there was --

 7              THE COURT:  No, that doesn't -- nope, I am not

 8    persuaded.  I have to tell you this -- a response is not

 9    meeting the question at hand.  Document request number 1

10    requests "All documents concerning your communications with

11    those who you contend are similarity situated to you, this

12    specifically includes but is not limited to communications

13    like the one attached at Exhibit A, that your attorney sent

14    on your behalf in this case."

15              I am going to grant that request.  You have to

16    disclose not only A but any other similar letters.  Those

17    would be the documents concerning communication.  Then with

18    regards to interrogatory number 4, "Identify all persons to

19    whom communications about this lawsuit have been sent by you,

20    which includes by your counsel" and --

21              MR. SWEGMAN:  Right.

22              THE COURT:  -- that again is at A or any

23    communication like A.  And that includes social media which

24    would be your website except I can't find any evidence that

25    on the --
```

```
 1              MR. SWEGMAN:  Exactly.  And I will --

 2              THE COURT:  --- and you all have to get to the

 3    bottom of that.  So in sum and substance, I am going to grant

 4    the -- I am going to say that you have to comply with the

 5    ROG(sic) and the RTD.  We do this in lieu of formal motions

 6    to compel to keep down the costs.

 7              MR. SWEGMAN:  I understand that.

 8              THE COURT:  So --

 9              MR. SWEGMAN:  Let me just get clarification.  They

10    are asking for the identity, will that include the address of

11    the persons that were on the list of this mailing?

12              THE COURT:  Well, I do think it is -- yes.

13              MR. SWEGMAN:  Okay, so there is address --

14              THE COURT:  Because I mean, frankly these are all

15    the employees in any event --

16              MR. SWEGMAN: Yes.

17              THE COURT:  -- so the extent that --

18              MR. SWEGMAN:  Well, no -- I just so that you are

19    certain where everything is, some of them are ALDI employees.

20    Some of them were ALDI employees but are no longer ALDI

21    employees and that is true of most of the plaintiffs, the

22    named plaintiffs in the case.  And as I am sure you are

23    aware, people who still work for the company are generally

24    reluctant to get involved in something like this for reasons

25    that are apparent to everyone.  But I will provide names and
```

```
 1   addresses.

 2            There was an earlier letter sent.  Which is how we

 3   got in touch with the original named plaintiffs and that was

 4   sent obviously before we filed the lawsuit.  It was a pure

 5   advertisement and it did not -- well, let me say this.  I am

 6   not certain but I do not believe it included an opt in form

 7   because at the time of the original advertising letter, there

 8   was nothing to opt into.

 9            Our process --

10            THE COURT:  From both sides as well and to the

11   individuals who are either current or former ALDI employees

12   disclosed to whom it was mailed.

13            MR. SWEGMAN:  Okay.  And are we talking about the

14   initial letter?

15            THE COURT:  Yes.

16            MR. SWEGMAN:  Before the lawsuit was filed?  Or the

17   letter that --

18            THE COURT:  And ---

19            MR. SWEGMAN:  -- any letters that we have sent out

20   subsequent to the lawsuit?

21            THE COURT:  Yes.

22            MR. SWEGMAN:  Okay.  All right.

23            THE COURT:  Yes and the individual names and

24   addresses.  And I do wish to make sure that you file on ECF

25   the envelope in this case.  I am not going to need to see the
```

1    other disclosures.  You are going to deal with that in

2    discovery with defendants.  But you have represented to me

3    that there is an envelope in the mail essentially and I would

4    like it to be put on ECF so that it is --

5             MR. SWEGMAN:  My understanding from my law clerk

6    was that that happened last night.

7             THE COURT:  Let me look.

8             MR. SWEGMAN:  It went out as an e-mail to you and

9    to counsel for the defendants.  And it was basically just a

10   short note with copies of the various envelopes because some

11   envelopes were little different than others because

12   jurisdiction has its own requirement.  But each of the

13   envelopes indicates advertisement on the front of it.

14            THE COURT:  Okay so let me do this.  Let me check

15   because you are saying that you believe that your paralegal

16   filed it on ECF?

17            MR. SWEGMAN:  I believe -- we file everything that

18   way these days I guess.

19            THE COURT:  Yes.  Let me check.  I don't think I

20   saw it and if I didn't, I want you to know that so that you

21   can refile.  There is nothing filed as of -- the latest

22   filing was 3/29 and I believe that was your -- that was me

23   saying we are having a scheduling conference or a recorded

24   conference.  So we have received nothing on ECF regarding the

25   envelopes.

1           MR. SWEGMAN:  Okay.  All right.  I will make sure

2    that it  happens today.  And we will put together the list

3    that you are requesting and try and get that out tomorrow.

4    And I will try and find out and let both of you know what the

5    story is on our website and why this lawsuit doesn't appear

6    there.  Because God knows, that is the whole reason to have a

7    website and I simply can't explain why it is not easily

8    accessed on that website.

9           MS. JOHNSON:  Your Honor?

10          THE COURT:  Yes?

11          MS. JOHNSON:  This is counsel for defendant, Louisa

12   Johnson.  I would submit that I would rather -- to your

13   point, this was supposed to be your call on whether notice

14   should be sent and so I am not advocating that the website be

15   corrected to repost information about the lawsuit at this

16   time.  I don't want that.

17          THE COURT:  Well, I understand that.  I understand

18   that.  Neither -- I am not taking a position on it, I am just

19   saying that the letter right now isn't -- using the word

20   misleading is too strong.  It doesn't proport to say what in

21   fact it is -- is acceptable on line.  And it came to my

22   attention because I wanted to see whether a receiving of this

23   letter would see if they followed the bouncing ball.

24          It seemed important to let you all know that but

25   yes I take no position as to whether you should repost.

1        MR. SWEGMAN:  And obviously when we sent this

2  letter out, someone assumed or understood that it was on our

3  website, otherwise we would not have made that suggestion

4  that they look at it.  So I will try and find out what the

5  story is.

6        THE COURT:  Okay, all right.  Thank you all.  I am

7  going to grant the defendant's request and hopefully that

8  will keep the trains moving for you all.  Okay?

9        MR. SWEGMAN:  Very good.

10       THE COURT:  All right.  Thank you.

11       MR. SWEGMAN:  Thank you for your time, Your Honor.

12       THE COURT:  Okay, you take care.

13       MR. SWEGMAN:  Ms. Johnson, take care.

14       MS. JOHNSON:  Yes, you too.

15       MR. SWEGMAN:  Bye, bye.

16       MS. JOHNSON:  Bye.

17    (Whereupon, at 10:27 a.m., the telephone conference

18  concluded.)

19

20

21

22

23

24

25

## C E R T I F I C A T E

I certify that the foregoing is correct transcript

from the electronic sound recording of the proceedings in the

above-entitled matter.

*Lisa N. Contreras  4/23/2019*
Lisa N. Contreras           Date
Certified Transcriber
Certificate No.:  CET**D-474