**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JEREMY HUNT, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:18-cv-2485-PX |
| ALDI, INC. | * | |
| Defendant. | * | |

***

**<u>MEMORANDUM OPINION</u>**

Pending in this Fair Labor Standards Act ("FLSA") collective action are several motions ripe for resolution. Plaintiffs move for conditional certification of the class under the FLSA, which Defendant Aldi, Inc. ("Aldi") vigorously opposes. ECF Nos. 58–60. Aldi separately moves for this Court to dismiss certain Plaintiffs for lack of personal jurisdiction, and to compel arbitration for those store managers whose employment contracts included arbitration clauses. ECF Nos. 47, 51. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court DENIES Plaintiffs' conditional certification motion, GRANTS Aldi's motion as for lack of personal jurisdiction as to Plaintiff Gorts and DENIES as moot the motion to compel arbitration.

## I.     Background

Defendant Aldi is a nationwide grocery store chain that sells discount food and beverage items. Aldi is headquartered in Illinois and runs 1,868 stores throughout the United States. ECF No. 47-2 ¶ 4. Aldi's supervisory structure is comprised of Divisions separated geographically throughout the country. The Frederick Division includes all 47 Maryland stores. *Id.* ¶¶ 4–5, 9. District Managers oversee several stores in any given region. Store Managers directly report to District Managers and are responsible for operating a specific Aldi store. *Id.* ¶ 5.

Plaintiffs, Aldi Store Managers, are pursuing an FLSA collective action.  ECF No. 22.
Named Plaintiffs Hunt, Anderson, Martin and Gorts are Store Managers who work at Aldi
locations in states other than Maryland.  *Id.* ¶¶ 11–17.  During the course of this litigation, other
Store managers submitted early "opt-in" notices, even though the Court had not yet certified a
collective action.[1]

On December 6, 2018, Plaintiffs filed, without objection, the Second Amended
Complaint.  ECF No. 22.  The Second Amended Complaint avers that "[t]here are numerous
similarly situated current and former employees of" Aldi who are subject to the same
employment terms and conditions.  *Id.* ¶ 80.  They are paid an hourly wage and routinely work
more than forty hours a week.  *See id.* ¶¶ 74–75, 80.  Further, and contrary to the Aldi job
description for "Store Managers," none of them perform true managerial tasks.  *Id.* ¶¶ 37–38.
Rather, Plaintiffs contend that all Store Managers almost exclusively perform "core tasks" of
"manual labor" to include unloading trucks, stocking inventory, working the cash register,
sweeping and mopping floors and setting up store displays.  *Id.* ¶¶ 39–47.  Plaintiffs further
allege that they retained no discretionary authority and took all direction from Aldi's District
Managers.  *Id.* ¶¶ 44, 62.

On December 26, 2018, the Court granted the parties' joint request to take discovery
specifically on the propriety of conditionally certifying a nationwide class.  ECF Nos. 28, 29.  As
part of this certification discovery, Plaintiffs deposed Aldi's corporate representative pursuant to
Federal Rule of Civil Procedure 30(b)(6); Aldi deposed five Plaintiffs; and the parties exchanged
over 5000 pages of record evidence, several sworn declarations, answers to interrogatories and

---

[1] *See* ECF No. 15 (Consent of Danielle Tucker to become a Party Plaintiff); ECF No. 16 (same as to Patrick Foley); ECF No. 48 (same as to Michael Hoshield).  Although the consent notices for Foley, Anderson and Tucker predated the Plaintiffs' filing of the Second Amended Complaint, *see* ECF No. 22, they are not added to the operative Complaint as named Plaintiffs.

requests for admissions.  The following summarizes the record evidence submitted as to the propriety of conditional certification.

The interplay between District Managers and Store Managers is varied in the Aldi corporate structure.  Although District Managers are responsible for the stores within his or her District, each District has a different number of stores.  *See* ECF No. 47-2 ¶¶ 4–5.  Within each store, the employee structure also varies.  Some stores employ Shift Managers while others employ an Assistant Store Manager or Lead Store Associate.  Stores also vary in workforce size, with the largest stores using 35 to 45 employees and the smallest only 8 or 9.  ECF No. 59-5 at 17:1–16; ECF No. 59-8 at 17:12–20.

Store Managers, including Plaintiffs, admit to receiving a bi-weekly salary, plus a monthly bonus tied to the store's productivity that varied from store to store.  ECF No. 59-6 at 9:18–10:10 (Anderson acknowledging receipt of productivity bonus); ECF No. 59-8 at 3:20–4:5 (Gorts testifying paid salary between $58,000 and $60,000 annually plus monthly bonus based on store sales); ECF 59-4 at 12:13–13:9 (Hunt receiving performance bonus in addition to salary); ECF No. 59-7 at 6:15–7:12 (Martin received bi-weekly salary of $2600 plus monthly bonus that varied); ECF No. 59-10 at 2:9–15 (Foley's salary plus bonuses amounted to about $90,000 per year).  Other, non-Plaintiff Store Managers attest to having varied hours of employment (albeit hovering around 50 hours per week) consistent with being a salaried employee.  ECF No. 59-12 ¶ 18; ECF No. 59-13 ¶ 15; ECF No. 59-14 ¶ 20.  Accordingly, in contrast to the Second Amended Complaint, Store Managers appear to be compensated as salaried employees.  *But see* ECF No. 22 ¶¶ 47–51.  Store Managers are the only store-specific employees eligible to receive a productivity bonus.

Also contrary to the complaint allegations, the Store Manager performs supervisory tasks

and retains discretionary authority consistent with the job description.  Overall, Store Managers

must fulfill two objectives:  to manage all store operations and personnel, and to maximize sales

while containing expenses.  *See, e.g.*, ECF No. 59-14 at 18.  The Store Managers' job description

is consistent with these objectives in that Store Managers are expected to interview and

recommend candidates to hire, train and evaluate employees, resolve employee complaints,

ensure the store is properly stocked, maintain cleanliness of store, and achieve payroll and

inventory budgeting goals.  *Id.* at 18–19.

Several non-Plaintiff Store Managers attest to performing key management functions

consistent with the Store Manager job description.  ECF Nos. 59-11, 59-12, 59-13.  Generally,

each describes, by sworn declaration, spending 85 to 100 percent of their time engaging in a

wide variety of managerial duties.  ECF No. 59-11 ¶ 27; ECF No. 59-12 ¶ 30; ECF No. 59-13 ¶

25.  Store Manager Jason Bullins sets out in great detail how, for the last ten years, he has

managed the "daily operations of [his] store and the store employees."  ECF No. 59-11 at ¶ 4.

He has, for example, worked with his District Manager to hire 200 employees, all in part on the

strength of his recommendation.  *Id.* ¶ 6 (outlining hiring procedures).  Bullins decides how and

when to discipline his staff for poor performance, provides written performance evaluations, and

makes recommendations for promotion which are often implemented.  *Id.* ¶¶ 7–10.  Bullins also

conducts all the store budgeting, ordering of products and scheduling of staff working hours.  *Id.*

¶¶ 18, 22, 24.  Each month, Bullins also "reevaluates store sales and make[s] changes to

employee hours . . .to ensure my store achieves a profit."  *Id.* ¶ 25.  Critically, if not somewhat

obviously, Bullins attests that his experience is "very different" from that of the Plaintiffs spend

most of their time engaging in manual labor:

> Considering the time it takes to set and adjust employee work
> schedules, prepare budget, conduct the various inventory loss

4

> checks, observe employees' work performance, coach and train employees, discipline employees, make and update product orders and delivery truck schedules, conduct store walkthroughs to check on the store's condition, delegate out additional tasks to employees to address any issues spotted, handle customer complaints, handle employee complaints, complete various paper work, interview employees, make promotion recommendations, conduct performance evaluations and perform other tasks . . . , I estimate that I spend 100% of my day performing managerial and supervisory tasks, either alone or in combination with other work . . . ."

*Id.* ¶ 27; *see also* ECF No. 59-12 (Dicus-Calder affidavit attesting to similar supervisory functions managing store with 32 employees); ECF No. 59-13 ¶¶ 23–25 (Lynam affidavit attesting to spending very little time "performing my employees' tasks (such as stocking, cleaning and running cash registers) apart from the opportunity to "observe, coach, train and delegate"); ECF No. 59-14; ECF No. 59-15.

Aldi District Managers also corroborate the scope of Store Managers' responsibilities under their supervision.  ECF No. 59-2; ECF No. 59-3.  One District Manager, who supervises four Store Managers, noted that the Store Managers are "responsible for the management of their staff, and it is their role, and not mine, to train, coach, delegate to, supervise, or direct Store Associates, Shift Managers and Manager Trainees."  ECF No. 59-2 ¶ 5.  Another District Manager, responsible for four stores in the Frederick Division, describes his store-specific role as one of advisor to the Store Managers.  He discusses "any issues on which the Store Manager wants my input or advice, which may include personnel issues, store performance, employee development, company direction, or the results of a government agency's inspection of that store."  ECF No. 59-3 ¶ 5.  But otherwise, the Store Manager is responsible for running the store. *Id.*  Store Managers within the Frederick Division also recommend employees for promotion, handle disciplinary matters and participate in any decision to terminate employment of any store staff. *Id.* ¶¶ 9–11.

5

Even Plaintiffs admit that their jobs involve similar managerial tasks.  Plaintiff Hunt

testified to the challenges of scheduling his employees and the need to "spread out" his workers

over a 12-hour day.  ECF No. 59-4 at 6:11–24.  Hunt also testified to incentivizing his employees

to "make it fun in doing your work."  *Id.* at 7:6–24 (admitting that unloading truck is to "teach"

his employees "how to hit that standard and then" requiring his employees to "hit that

standard.").  Rochelle Anderson also admitted to training her staff and needing to multi-task

which involved both working alongside her employees and supervising the quality of their work.

ECF No. 59-6 at 7:9–8:3; *see also* ECF No 59-7 at 3:5–4:11, 7:13–20 (Martin testifying to his

role training and supervising staff, writing up orders, and being ultimately responsible for all

operations within the store); ECF No. 59-8 at 8:4–10 (Plaintiff Gorts testifying that District

Managers expected Gorts as Store Manager to coach staff on observed job deficiencies); ECF

No. 59-10 at 3:4–11 (Foley testifying to having sole authority to create work schedule for staff).

Plaintiffs also do not present a unified front as to what daily tasks they perform.  While

all attested by written declaration that 80–90% of their time was spent on non-managerial tasks,[2]

their depositions presented a more complex and varied picture.  Several Plaintiffs admitted that

they had to multi-task in their positions, unloading trucks or stocking shelves as part of training

or supervising their employees.  ECF No. 59-4 at 8:5–9:23 (Hunt had to train his employees and

"still do my job of checking meat, filling meat, quality check on produce . . . .");  ECF 59-6 at

7:5–24 (Anderson training staff while working alongside them); ECF No. 59-7 at 3:5–22

(Martin admitting to "wearing the manager hat and keeping an eye on them" even when stocking

---

[2] Each Plaintiff executed uniformly worded post-deposition declarations, which often undermines, if not outright contradicts, Plaintiffs' sworn deposition testimony.  *See, e.g.*, ECF 58-2 at 2–3; ECF No. 58-3 ¶¶ 8–9 (Anderson); ECF No 58-4 ¶ 6 (Gorts); ECF 58-5 ¶ 14 (Martin).  For instance, although each Plaintiff attested in declaration to knowing Store Managers' duties nationwide, those deposed admitted to having no knowledge about how Store Managers perform their jobs elsewhere.  The Court finds this tension further warrants a searching individualized inquiry regarding such contradictions, thus undermining any efficiencies to be gained by proceeding collectively.

the shelves himself).  Some Plaintiffs even testified to performing very different tasks from each

other.  Although Plaintiff Martin testified that he spent minimal time as a cashier, ECF No. 59-7

at 4:2–10, Plaintiff Hunt spent two to three hours each day on the cash register at his store.  ECF

No. 59-4 at 18:16–20.

Against this backdrop, none of the Plaintiffs could provide any evidence to support why

their job duties at the handful of particular stores in which they worked were representative of

the Store Managers nationwide.  ECF No. 59-7 at 11:24–12:1 (Martin had no firsthand

knowledge of other store managers' job functions); ECF No. 59-4 at 14:10–15:4 (same as to

Hunt); ECF No. 59-8:17–25 (Gorts has "opinion" based on "limited contact" with other store

managers).

## II.      Motion for Conditional Certification of FLSA Class

Section 216(b) of the FLSA permits collective actions to proceed when a defined class of

plaintiffs have been subjected to the same FLSA violations.  *See* 29 U.S.C. § 216(b).  The FLSA

allows similarly situated Plaintiffs to opt-in to the class as a full party-in-interest by

"affirmatively notify[ing] the court of their intentions to be a party to the suit."  *Quinteros v.*

*Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (citation omitted).

Whether an FLSA case may proceed as a collective action involves a two-step process.

*Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *Syrja v. Westat, Inc.*,

756 F. Supp. 2d 682, 686 (D. Md. 2010).  First, the Plaintiff must seek "conditional certification"

of the class which, if granted, allows the Plaintiff to notify other similarly situated members of

their opt-in rights.  *Butler*, 876 F. Supp. 2d at 566.  Second, after a period of discovery, the Court

may entertain motions to decertify the class if the evidence reflects that the claims would not be

resolved efficiently or equitably by collective action.  *Syrja*, 756 F. Supp. 2d at 686.

7

At the conditional certification stage, plaintiffs bear a relatively modest burden of demonstrating that they are similarly situated to proceed as a class. *See D'Anna v. M/A–COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995). However, "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright." *Purdham v. Fairfax Cty. Pub. Sch.,* 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). Conditional certification may not be appropriate, for example, where the Court must engage in "substantial individualized determinations for each class member." *Syrja*, 756 F. Supp. at 686 (quoting *Purdham,* 629 F. Supp. 2d at 549); *Gionfriddo v. Jason Zink, LLC*, 7689 F. Supp. 2d 880, 887 (D. Md. 2011); *see also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (finding conditional certification inappropriate where adjudication of a collective action would have required factual inquiries into employment relationships involving different managers at different geographic locations throughout the country, and where the court concluded that a finding of liability at one location would not necessarily lead to a finding of liability at another location).

On this record, certification of a nationwide class is not appropriate. Although Plaintiffs vigorously contend that they spend the lion's share of their time performing "manual labor," several other Store Managers have submitted sworn declarations that they routinely participate in duties that are wholly supervisory in nature. They are responsible for "on-boarding, training and developing their staff, and disciplining them if need be." ECF No. 59-2 ¶ 8. Non-plaintiff store managers have also attested to spending much of their workdays participating in the hiring, discipline, and training of employees. They complete written performance evaluations, conduct store meetings, set and modify work schedules, maintain inventory and project budget for sales and labor hours. ECF Nos. 59-12, 59-13, 59-14.

By contrast Plaintiffs contend they spend their time largely on manual labor.  The vast chasm between Plaintiffs evidence and Defendants highlights that Store Managers are not all "similarly situated."  Nor would any efficiencies flow from certifying a collective action because each opt-in Store Manager would be subject to the same searching scrutiny to determine whether the particular Store Manager is more "manager" or "laborer."

Moreover, Plaintiffs' own record evidence further undermines that efficiencies may be gained in certifying a nationwide class.  Although Plaintiffs uniformly averred that they engaged in no supervisory duties, their deposition testimony reaffirms that they performed supervisory tasks consistent with the Store Manager job description.  Plaintiffs admitted to training their employees and more particularly to performing many of the complained-of manual labor tasks— stocking shelves, running the cashier or unloading merchandise—as part of their supervisory role.  Some Plaintiffs testified to working alongside store employees to boost morale, ECF No. 59-4 at 7:6–24, while others did so as part of training, ECF No. 59-4 at 8:5–9:23; ECF 59-6 at 7:5–24, and others still did so as a mechanism of quality control, ECF No. 59-7 at 3:5–22.

On this record, the Court finds that conditionally certifying a nationwide class of store managers across 1,868 stores effectively dooms the parties to engage in countless hours attempting to weed out those Store Managers who cleave more closely to performing as "manual laborers," as opposed to those who spend practically no time on manual labor.  To be sure, the Court cannot, and is not, making credibility determinations at this stage.  *See Essame v. SSC Laurel Operating Co., LLC*, 847 F. Supp. 821, 825 (D. Md. 2012).  However, the Court cannot also ignore that the record as a whole underscores that Store Managers actual duties vary significantly from store to store, and division to division.[3]  The Court, therefore, sees no

---

[3] The Court also notes that although Aldi subjects its Store Managers to a uniform job description and payment structure, the evidence in this respect supports that the Store Managers are exempt from FLSA

efficiencies to be gained through conditional certification which will only lead to both sides inquiring each Store Manager is DENIED.[4]

The Court next turns to Aldi's motions.[5]

### III.    Aldi's Motions

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Aldi separately moves for summary judgment on personal jurisdiction grounds against named Plaintiff Gorts, and early opt-ins, Tucker and Foley, because none of the three ever worked at an Aldi in Maryland.  ECF No. 47.  Because the Court has denied conditional class certification, the early opt-in plaintiffs shall be dismissed without prejudice.  *See Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988); *see also Kane v. Gage Merchandising Servs., Inc.*, 138 F. Supp. 2d 212 (D. Mass. 2001); *see, e.g.*, *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 943 (D. Minn 2009).  The Court's jurisdictional analysis is thus confined to Plaintiff Gorts.

To determine whether personal jurisdiction over a defendant is proper, courts conduct a two-step inquiry.  *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012); *Ellicott Mach. Corp., Inc. v. John Holland Party, Ltd.*, 995 F.2d 474, 477

---

requirements.  *See* 29 U.S.C. § 213(a)(1) (exempting "employee employed in a bona fide executive, administrative, or professional capacity").  Store Managers agreed they are paid a salary plus performance bonus and are required to perform core managerial functions as stated in Aldi's 2016 Store Manager job description.  ECF No. 59-14 at 17-20.  Thus, while Plaintiffs are correct that some evidence exists in support of a uniform policy and payment structure, that very evidence cuts against the sufficiency of a wage and hour overtime claim.

[4] The Court recognizes that most recently in *Griffin v. Aldi, Inc.*, No. 5:16-CV-354, 2017 WL 1397320 (N.D.N.Y. Feb. 22, 2017) conditional certification was granted as to Aldi Store Managers on an identical recovery theory.  *Griffin,* however, does not persuade this Court to rule similarly.  Unlike this case, the *Griffin* court based its decision in part because class discovery "clearly [had] not been completed" and that Plaintiffs were not afforded the opportunity to "test the factual assertions" of Aldi's witnesses.  *Id.* at *4.  The parties in this case were given ample discovery and Plaintiffs never complained of similar deficiencies.  The *Griffin* court also never addressed that which is central to this Court's determination—how the record viewed as a whole underscores the wide variation in the Store Manager's job duties, undermining any efficiency in proceeding as a collective.

[5] Aldi has also moved for leave to file a sur-reply to address specific parameters of notice to the opt-in class if conditionally certified.  *See* ECF No. 61.  Because the Court has denied conditional certification, the motion is denied as moot.

(4th Cir. 1993).  First, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), courts look to whether the forum state's long-arm statute authorizes personal jurisdiction.  *See* Fed. R. Civ. P 4(k)(1)(A); *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Second, courts look to whether jurisdiction is proper under the Due Process Clause of the Fourteenth Amendment.  *Carefirst of Md., Inc.*, 334 F.3d at 396.

Due process is satisfied when a court has either "general" or "specific" jurisdiction over a defendant.  *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014); *Gov't of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F. Supp. 2d 468, 471 (D. Md. 2002). General jurisdiction allows a court to hear any claim against a defendant whose activities in the state are so "continuous and systematic" that the defendant is said to be "at home" in the jurisdiction.  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984); *Carefirst of Md., Inc.*, 334 F.3d 397.  Usually, the "forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1554 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137(2014)).  A high volume of business activity within the state alone will not confer general jurisdiction; rather, because "[a] corporation that operates in many places can scarcely be deemed at home in all of them," the inquiry "calls for an appraisal of a corporation's activities in their entirety."  *Daimler*, 571 U.S. at 139 n.20.

By contrast, specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).  Specific jurisdiction may be exercised if "the defendant has purposefully directed his activities at residents of the

forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Fidrych v. Marriott Int'l, Inc.*, No. 18-2030, 2020 WL 986674, at *10 (4th Cir. Mar. 2, 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

The parties devote considerable energy to contesting the applicability of *Bristol Myers Squibb v. Superior Court of Calif.*, 137 S. Ct. 1773, 1780 (2017)—a recent United States Supreme Court addressing personal jurisdiction in the context of a mass action—to an FLSA collective action.  However, because this Court has denied conditional certification and dismissed the early opt-in plaintiffs, there is no need to wade into this debate.  All that is needed here is to apply the familiar rules of personal jurisdiction to Gorts.

Aldi argues that this Court cannot exercise personal jurisdiction as to Gorts' claims.  The Court agrees.  Even assuming the claim may proceed under Maryland's long-arm statute, this Court cannot exercise jurisdiction consistently with due process.[6]

Specific jurisdiction is improper because Gorts and his claims simply have no connection to the state of Maryland.  The uncontroverted record evidence shows that Gorts does not live in Maryland and works neither in Maryland nor within the Frederick Division.  Thus, while Aldi's 47 stores within Maryland certainly qualifies as purposeful activity directed at the state, the Court cannot say that this "litigation results from alleged injuries that arise out of or relate to those activities." *Fidrych*, 2020 WL 986674, at *10.

Further, the Court may not exercise general jurisdiction over Aldi.  To be sure, Aldi

---

[6] The Court recognizes that Plaintiffs must initially identify the statutory provision of Maryland's long arm statute that confers jurisdiction. *See, e.g., Johns Hopkins Health Sys., Corp. v. Al Reem Gen. Trading & Co.*, 374 F. Supp. 2d 465, 472 (D. Md. 2005).  Although Plaintiffs have not enumerated the statutory provision, they have asserted, in sum and substance, that personal jurisdiction exists because Aldi "transacts any business or performs any work in the State." Md. Code Ann., Cts. & Jud. Procs. § 6–103(b)(1).

conducts significant business within the state of Maryland.  But the record does not reflect

activity is not so extensive that Aldi can be said to be "at home" in Maryland, especially since

the 47 stores within the state are only a small fraction of its 1,868 stores nationwide.  Just as "[a]

corporation that operates in many places can scarcely be deemed at home in all of them," Aldi

cannot be said to be at home in Maryland.  *Daimler*, 571 U.S. at 139 n.20; *cf. Tyrrell*, 137 S. Ct.

at 1559 (railway not "at home" in Montana despite more than 2,000 workers and 2,000 miles of

railroad in the state).

The Plaintiffs do not address the propriety of either specific or personal jurisdiction as to

Gorts' claims.  Instead, Plaintiffs argue that Aldi waived personal jurisdiction because Aldi

"agreed" that Gorts could be added to the Amendment Complaint as a party.  ECF No. 52 at 2–3.

The Court disagrees that Aldi waived this defense.

Although Aldi consented to the *filing* of Plaintiffs' Second Amended Complaint, *see* ECF

No. 20 ¶ 4, this consent does not amount to a waiver of defenses.  In fact, Aldi timely filed an

Answer which raised its personal jurisdiction defense to Gorts' claims.  ECF No. 23 ¶¶ 28, 33.

This is entirely sufficient to preserve Aldi's objection.  Fed. R. Civ. P. 12(h)(1); *see, e.g.*, *Strong

Pharm. Labs., LLC v. Trademark Cosmetics, Inc.*, No. RDB 05-3427, 2006 WL 2033138, at *3

n.3 (D. Md. July 17, 2006).  The Court must therefore find that Plaintiffs have failed to establish

personal jurisdiction and grant Aldi's motion for summary judgment as to Gorts.

**B.  Motion to Compel Arbitration**

Aldi also separately moves to compel arbitration as to early opt-in Plaintiffs Dean Welch

and James Krakowski.  The Court denies the motion as moot.  Because this Court has determined

the case will not proceed as a collective action, Krakowski and Welch, there is no collective to

which they may opt-in, and thus must be dismissed without prejudice from the suit.  The motion

is denied as moot.

### IV.     Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' motion to conditionally certify a collective action.  The Court also GRANTS Aldi's motion for summary judgment and DENIES AS MOOT Aldi's motion to compel arbitration.  A separate Order follows.

___3/16/2020_____                          ___/s/_____
Date                                                                  Paula Xinis
                                                                        United States District Judge