IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |  |
|---|---|---|
| **JEREMY HUNT**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. CBD-18-2485 |
| **ALDI, INC.**, | ) ) ) | |
| Defendant. | ) ) | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Joint Motion for Approval of Settlement and Dismissal of Lawsuit with Prejudice ("Joint Motion"). ECF No. 67. Plaintiffs Jeremy Hunt ("Hunt"), Rochelle Anderson ("Anderson"), and David Martin ("Martin) (collectively "Plaintiffs") filed their Second Amended Complaint[1] (the "SAC") on November 26, 2018, and brought claims for overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* ECF No. 18. Plaintiffs sought unpaid wages, liquidated damages, interest, and reasonable attorneys' fees and costs from Defendant Aldi, Inc. ("Aldi"). The parties' settlement agreement ("Settlement Agreement") (ECF No. 67-2) states that Defendant will pay a

---

[1] This proceeding commenced on August 13, 2018, when Plaintiffs Hunt, Anderson, Martin, and Robert Simmons brought claims for overtime compensation and unpaid wages, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*, and the Virginia Minimum Wage Act ("VMWA"), Va. Code § 40.1-28.8, *et seq.* An amended complaint was filed on November 5, 2018, which dismissed the Maryland and Virginia claims, and the claims of Robert Simmons. The SAC was filed on November 26, 2018, in which Plaintiffs sought damages solely for an overtime claim under FLSA. ECF No. 18. The Joint Motion concerns this SAC.

1

total sum of $62,626.98 to be divided as follows: Plaintiff Hunt would receive $10,000 in compensation for his claims;[2] Plaintiff Martin would receive $7,757.50 in compensation for his claims;[3] and Plaintiff Anderson would receive $7,395 in compensation for her claims.[4] Parties also agreed that Defendant would pay Plaintiffs' counsel $37,474.48 for reimbursement for attorneys' fees and costs incurred throughout these proceedings.[5]

Pursuant to 28 U.S.C. § 636 and Local Rule 301, the Honorable Paula Xinis referred this matter to the undersigned for the making of a Report and Recommendation. ECF No. 70. I have reviewed the Joint Motion, the accompanying memorandum, and the applicable law. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md.). For the reasons stated herein, I recommend that the Court GRANT the parties' Joint Motion without modification as: (1) there exists a *bona fide* dispute; (2) the Settlement Agreement is both fair and reasonable under the *Saman* test; and, (3) the agreed to attorneys' fees appear to be reasonable under *Saman*.

---

[2] Defendant has agreed to pay Hunt $5,000 for alleged unpaid wages, and $5,000 for alleged liquidated damages and/or interest on back wages, for a total compensation of $10,000.00.

[3] Defendant has agreed to pay Martin $3,878.75 for alleged unpaid wages, and $3,878.75 for alleged liquidated damages and/or interest on back wages, for a total compensation of $7,757.50.

[4] Defendant has agreed to pay Anderson $3,697.50 for alleged unpaid wages, and $3,697.50 for alleged liquidated damages and/or interest on back wages, for a total compensation of $7,395.00.

[5] The *pro rata* share of individual Plaintiffs' fees and expenses are as follows: Hunt incurred fees and expenses of $14,898.91; Martin incurred fees and expenses of $11,557.83; and Anderson incurred fees and expenses of $11,017.74

**I.     Analysis**

    **A.  A *Bona Fide* Dispute Exists**

Congress enacted the FLSA to protect workers from poor wages and long hours, which are often the result of power imbalances between workers and employers. *Saman v. LBDP, Inc.*, No. Civ. A. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). Even when parties submit a joint motion seeking approval for a settlement agreement, the Court must undertake a multi-step review of the agreement and any attorneys' fees requested to ensure its reasonableness. *Id.* at 3. "[A]s a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* (citing *Lane v. Ko–Me, LLC*, Civ. A. No. DKC–10–2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011) (citation omitted)).

A *bona fide* dispute exists in this case. Plaintiffs make the following allegations. Plaintiffs contend they were employees of Aldi, Inc., a national grocery chain, which Defendant operated. Pls.' Second Am. Compl. 2. They further state that Defendant "sell[s] discount food and beverage items." *Id.* Plaintiffs worked as Store Managers at various stores of the Frederick Division of Defendant. Mem. in Supp. of J. Mot. 1, ECF No. 67–1. Plaintiff Hunt worked for Defendant from approximately June 2015 until November 2017; Plaintiff Anderson worked for Defendant from approximately January 2016 until November 2017; and Plaintiff Martin worked for Defendant from approximately January 2013 until December 2017. Pls.' Second Am. Compl. ¶¶ 11-13. During their employment, Plaintiffs allege that Defendant "failed to properly classify the Store Manager positions . . . and pay them overtime hours worked." Mem. in Supp. of J. Mot. 2. Specifically, Plaintiffs allege that Store Managers spend almost all of their time performing general labor tasks, like Defendant's other employees, such as stocking shelves,

unloading trucks, and sweeping floors, which led to Plaintiffs working excessive hours.  Pls.' Second Am. Compl. 2-3.  Plaintiffs allege they were typically scheduled to work fifty (50) hours a week, but claim to have routinely worked anywhere from sixty (60) to seventy (70) hours a week, and sometimes worked eighty (80) hours a week.  *Id.* at ¶ 53.  Plaintiffs were paid an hourly rate.  *Id.* at 47.  Plaintiffs further allege that they did not receive overtime ("time and a half") wages for working over forty hours a week.  *Id.*

Defendant denied that Plaintiffs' duties resembled that of a grocery store clerk.  Def.'s Answer 13-14, ECF No. 23.  Defendant also denied that Plaintiffs were paid hourly wages.  *Id.* at 16-17.  Further, Defendant denied all allegations related to Plaintiffs working more than forty (40) hours a week, and Defendant avers that Plaintiffs were paid a salary that covered any hours worked over forty (40) hours.  *Id.* at 17-19.  Defendant makes no admission of liability and at all times denies the allegations asserted by Plaintiffs.  Mem. in Supp. of J. Mot. 2.  Therefore, the Court is satisfied that a *bona fide* dispute concerning FLSA issues exists in this case.

### B.  The Settlement Agreement Passes the *Saman* Test

If a *bona fide* dispute exists, the next step in the analysis is to assess the fairness and reasonableness of a settlement agreement using the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).  Here, the Settlement Agreement appears to be fair and reasonable under the *Saman* factors.

### 1. Extent of discovery

According to the Joint Motion, the parties engaged in formal discovery, including propounding interrogatories, requests for production of documents, and in conducting several depositions. Mem. in Supp. of J. Mot. 3, 8. Although there are still outstanding issues that have not been resolved, exchanging discovery allowed the parties to evaluate the strengths and weaknesses of their respective cases, and conclude that settlement was in the parties' best interest. *Id.* at 8. Within discovery, parties exchanged information relating to the crux of the case including "specific duties performed by Plaintiffs and their compensation, and covered some damages questions, such as the hours Plaintiffs claimed to have worked and what hours their salaries were intended to cover." *Id.* Accordingly, the Court finds parties had sufficient opportunity to obtain evidence and evaluate the likelihood of success in the event of further proceedings in the litigation.

### 2. Stage of the Proceedings

This settlement comes approximately a year and a half after the case was filed. The parties exchanged a significant amount of discovery, participated in telephone conferences with Judge Xinis, and filed extensive contested motions. This case consists of complex issues, including Plaintiffs' motion for conditional certification of a class under the FLSA, and Defendant's motion to compel Plaintiffs to arbitration. ECF Nos. 51, 58.

The parties began extensive negotiations after the Court denied Plaintiffs' motion for conditional certification of a class under FLSA (ECF No. 65). Mem. in Supp. of J. Mot. 2-3. Further, parties jointly requested the Court to stay the proceedings for sixty (60) days to allow for settlement discussions. ECF No. 66. After several weeks, the parties were able to come to an agreement. The parties settled before summary judgment motions were filed. Due to the

complexity of the case, it is unlikely that further negotiations and/or discovery would have resulted in a different outcome.

### 3. Absence of Fraud or Collusion

There is no evidence that the Settlement Agreement is the product of fraud or collusion. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Saman*, 2013 WL 2949047, at *5 (quoting *Lamscolo*, 2009 WL 3094955, at 12). The parties contend that settlement terms were reached after the Court made a ruling in this case, that substantially impacted positions.[6] Mem. in Supp. of J. Mot. 9. Further, the parties negotiated for several weeks in order to agree to the specific settlement terms. Lastly, the parties aver that the settlement is in their best interests. Mem. in Supp. of J. Mot. 8. The Court is satisfied that the Settlement Agreement is a result of the parties' arm's-length negotiations.

### 4. Experience of Counsel

Plaintiff is represented by the law offices of Peter T. Nicholl. In support of the Joint Motion, Plaintiffs' counsel provided the declaration of George E. Swegman, who is Plaintiffs' lead counsel. Decl. of George E. Swegman ("Swegman Declaration"), J. Mot. Ex. B, ECF No. 67-3. Mr. Swegman has been in practice for over forty (40) years and has litigated more than twenty (20) single or multiple plaintiff FLSA actions in the past five years. Mem. in Supp. of J. Mot. 10, J. Mot. Ex. B, Decl. of George E. Swegman ¶ 18. Other counsel for Plaintiffs include Ben Davis, who has been admitted to the bar for thirteen years, as well as Michael Brown and Kelly Burgy who have been admitted to the bar for less than five years. Accordingly, the Court

---

[6] Judge Xinis denied Plaintiffs' motion for conditional certification of a class under FLSA.

is satisfied that Plaintiffs' counsel is sufficiently experienced in this area of law to represent Plaintiffs in this matter.

### 5.  Opinions of Counsel

Counsel for both parties believe the Settlement Agreement is in their clients' best interests.  Mem. in Supp. of J. Mot. 8.  Both parties agreed that there was a possibility that Plaintiffs could prevail, and Defendant would be faced with a monetary judgment; but also, that Defendant could prevail, which would bar Plaintiffs from recovering any damages.  Mem. in Supp. of J. Mot. 6-7.  The parties contend that the Settlement Agreement, "fully resolves all of Plaintiffs' claims for wages, liquidated damages, interest, and attorneys' fees and costs."  Mem. in Supp. of J. Mot. 3-4.  In fact, "the [p]arties…submit that the terms of this settlement are fair, reasonable and resolve a *bona fide* dispute between the [parties], with respect to litigation and damages.  Mem.  in Supp. of J. Mot. 1.  Additionally, had this case proceeded to trial, parties would have endured an "expensive, lengthy trial, with risk to both sides," as well as a delay in resolution of the case, with "possib[le] post-trial motions and appeals."  Mem.  in Supp. of J. Mot. 9.

### 6.  Probability of Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

According to the Joint Motion, Plaintiffs are receiving a reasonable award in light of the individual situations with each Plaintiff.  Mem. in Supp. of J. Mot. 11.  Although there is no mention of how much Plaintiffs anticipated recovering, the Joint Motion discusses some difficulties Plaintiffs face in order to prevail on the merits of this case.  Plaintiffs have the burden to prove the amount of damages, which Parties contend would be difficult in this case.  *Id.* Additionally, although Plaintiffs contend that the position of Store Manager was misclassified with Defendant based on the duties they were required to perform, Plaintiffs realize that the

generic position of manager, is traditionally entitled to the executive exemption.  *Id.*  There is documentary evidence to support both sides of this argument.  *Id.*  The Settlement Agreement represents a recovery of an overtime rate of (time and a half), ten overtime hours per week, and considered a two-year statute of limitations.  Given the challenges Plaintiffs face in this case, the Settlement Agreement ensures Plaintiffs receive a reasonable compromise.  *Id.*

### C.  Attorneys' Fees

The final step in this inquiry is an independent assessment of the reasonableness of any attorneys' fees that may be included in a settlement agreement.  *Saman*, 2013 WL 2949047, at *3 (quoting *Lane,* 2011 WL 3880427, at *3).  In the course of this independent assessment, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at *6–7 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  When a claim for attorneys' fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's Local Rules which includes an appendix listing "Rules and Guidelines" for how parties are to request reimbursement of fees.  Local Rules, App. B (D. Md. Dec. 1, 2018).

Here, Plaintiffs' counsel seeks $37,474.48 in attorneys' fees and litigation expenses.[7] Mem. in Supp. of J. Mot. 11. In the Joint Motion, Plaintiffs address each of the *Saman* factors with varying degrees of depth. Certain factors were more significant to the determination of reasonableness in this case and are therefore addressed in detail *infra*. The remaining factors— while addressed in the Joint Motion—present no novel issues or have a significant impact on the reasonableness of the attorneys' fees requested.[8]

### 1. The Time and Labor Expended

The amount of "time and labor expended" by counsel on a particular case is an essential starting point for assessing the reasonableness of the total amount of fees requested. Accordingly, detailed information concerning the tasks performed by counsel during the hours they billed for a client's case is necessary for the Court to make an accurate assessment. *See United Food & Commercial Workers Unions v. Magruder Holdings, Inc.*, No. GJH-16-2903, 2017 WL 3129192, at *4 (D. Md. July 21, 2017) (noting the movant attached "a summary of the

---

[7] The litigation expenses include filing and service fees, which totaled $5,166.31. Mem. in Supp. of J. Mot. 11. Specifically, Plaintiffs request $400 for the filing fee, $90 for the fee to effect service, and $4,676.31 for court reporting services. Mem. in Supp. of J. Mot. Ex. B. Plaintiffs initially reported total fees of $351,185.42. *Id.* However, Plaintiffs submit that most of the litigation and discovery done in this case, focused on the conditional certification, in which Plaintiffs were unsuccessful. *Id.* Accordingly, the Court is only considering attorney's fees for work that was done apart from the conditional certification.

[8] The remaining *Saman* factors are:

> (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; . . . (7) the time limitations imposed by the client or circumstances; . . . (10) the undesirability of the case within the legal community in which the suit arose; [and] (11) the nature and length of the professional relationship between attorney and client . . . .

*Saman*, 2013 WL 2949047, at *6–7 (citing *Barber*, 577 F.2d at 226 n.28).

legal services performed in the matter, broken down into date, attorney, narrative of the task, hours expended, and fees charged").

Attached to the Joint Motion, Plaintiffs have provided a billing statement that explains what legal services were rendered. This billing statement is broken down by date and includes information on the individual who billed for the services, a description of the work conducted, and the total number of minutes spent on the particular task. Plaintiffs also provided a table that indicated the hourly rates of the attorneys and paralegals who worked on the case, as well as the total number of hours expended. J. Mot. Ex. B, Decl. of George E. Swegman ¶ 22. The Court notes that this billing statement was not organized by litigation phase, as required by the Local Rules. *See* Local Rules, App. B(1)(b) ("Fee applications, accompanied by time records, shall be submitted . . . organized by litigation phase."); *see also United Food & Commercial Workers Unions*, 2017 WL 3129192 at *4. Additionally, the billing statement did not specify which hours were billed to the conditional certification compared to hours that were billed to other parts of this case. However, in light of the fact that this is an unopposed motion for settlement, both parties were represented by counsel, the parties spent several weeks negotiating a settlement, and the final amount requested represents a significant reduction in the total amount of fees incurred by Plaintiffs' counsel, the Court is willing to accept the filing in its current format. Plaintiffs' counsel should ensure any future submissions for attorneys' fees are properly supported with information that is sufficiently detailed and formatted in compliance with the Local Rules or risk their request being denied. *See, e.g.*, *United Food & Commercial Workers Unions*, 2017 WL 3129192, *4 (directing a plaintiff re-submit its request for attorney's fees in an "organizational format consistent with [the Local Rules]").

### 2. The Novelty and Difficulty of the Questions Raised

Based on the allegations raised in the SAC, this case would have been a time consuming one to litigate considering the fact that the parties would have been required to litigate the proper classification of a Store Manager.  Mem. in Supp. of J. Mot. 11, 13.  This case commenced with difficult issues, such as a motion for conditional certification of a class under FLSA, and a motion to compel arbitration.  Plaintiffs would have had to prove damages under FLSA, specifically, how many overtime hours they worked and when they worked them, which would have been difficult to tabulate.  Furthermore, Plaintiffs faced a two-year statute of limitations with these claims.  These difficulties with Plaintiffs' case raise the question if Plaintiffs would have recovered all they alleged.

### 3. (5) The Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work the attorney seeks to be reimbursed.  The Local Rules include guidelines listing a presumptive range of reasonable hourly rates.  *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011 ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiffs' counsel is seeking to recover fees based on hourly rates that vary depending on their experience.  Mem. in Supp. of J. Mot. 12.  Plaintiffs argue these rates are within the local market rates.  *Id.*  For Mr. Swegman, Plaintiffs seek to recover a rate of $450 per hour.  Mem. in Supp. of J. Mot. Ex. B.  Mr. Swegman has over forty (40) years of experience.  These rates are within the Local Rules' guidelines for attorneys with over twenty (20) years of experience.  *See* Local Rules, App. B(3)(c).  Plaintiffs' counsel also seek to recover the following rates: $350 per hour for Benjamin Davis, $225 per hour for attorneys Michael Brown and Kelly Burgy, and

$150 per hour for paralegals and other staff.  *Id.*  These rates are also within the Guidelines in the Local Rules.  Therefore, the Court finds these rates to be reasonable.

### 4.  (6) The Attorney's Expectations at the Outset of the Litigation

Plaintiffs' counsel expected to recover a fee of approximately $500,000 at the outset of this case.  Mem. in Supp. of J. Mot. 14.  Plaintiffs intended to bring the case as a class action, however, as previously mentioned, the class certification was denied.  By working for a contingency fee, Plaintiffs' counsel is not able to recover what was originally contemplated.  Furthermore, Plaintiffs' counsel worked over 1000 hours on this case, totaling approximately $351,185.42, but is only requesting, $37,474.48, which is significantly less than the labor hours expended.

### 5.  (8) The Amount in Controversy and The Results Obtained

According to the Joint Motion, the amount in controversy was disputed, and Plaintiffs likely would have had difficulty proving damages at trial.  Mem. in Supp. of J. Mot. 11, 14.  With this settlement, Plaintiffs would receive an amount near the amount they would likely have recovered for back wages at trial, without the expense of litigating a jury trial, as well as the risks of losing at trial.  *Id.* at. 14.  Therefore, due to intricate issues in this case, settlement is ideal for both parties.

### 6.  (9) The Experience, Reputation and Ability of the Attorney

As detailed above, Plaintiffs' lead counsel asserts that he has significant experience with FLSA claims.  *See supra* Section I.B(4).  Of note is the fact that he has litigated over twenty (20) FLSA claims in the past five years and he has experience litigating individual and collective actions.  Mem. in Supp. of J. Mot. 14.  Lastly, his reputation in the community speaks to his experience in litigating FLSA claims.  *Id.*

### 7. (12) Attorneys' Fees Awards in Similar Cases

Plaintiffs' counsel's request for reimbursement of $37,474.48 in attorney's fees is approximately sixty percent (60%) of the total damages Plaintiffs will be collectively receiving. Counsel has not provided any examples of attorneys' fees awards in similar cases, but a review of a few cases from this district reveal this is a reasonable amount to recover considering the number of Plaintiffs, the complexity of the issues at hand and the procedural posture of the matter. *See, e.g.*, *Navarro v. Eternal Trendz Customs, LLC*, Civ. A. No. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) (approving a settlement which included attorneys' fees and costs amounting to $3,545.20 where plaintiffs were awarded $4,291.49 and $1,298.89 in wages and liquidated damages); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404 (D. Md. 2014) (Grimm, J.) (approving a settlement that was agreed to after informal discovery and alternative dispute resolution, and that included $3,000 in attorneys' fees and costs where plaintiff was awarded $4,500 in wages and liquidated damages); *Almendarez v. J.T.T. Enterprises Corp.*, Civ. No. JKS-06-68, 2010 WL 3385362 (D. Md. Aug. 25, 2010) (granting attorneys' fees 25 times the total amount eight plaintiffs recovered after trial). Accordingly, the Court finds the ratio between what Plaintiffs will recover and what Plaintiffs' counsel will be reimbursed is in line with other similar cases.

## II. Conclusion

Considering the foregoing analysis, the parties have satisfied the requirements of the *Saman* Test.  It is therefore my recommendation that the Court **GRANT** the parties' Joint Motion to approve the settlement and to dismiss the lawsuit with prejudice.


December 11, 2020                                                                                /s/

                                                                      Charles B. Day
                                                                      United States Magistrate Judge


CBD/pjkm